IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

ELIZABETH COWPERTHWAIT,      :      Case No. 1:24-cv-272

     : 

        Plaintiff,      :      Judge Matthew W. McFarland

     : 

     v.      : 

     : 

ARJO INC.,      : 

     : 

        Defendant.      : 

---

## ORDER AND OPINION

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 12). Plaintiff filed a Response in Opposition (Doc. 18), to which Defendant filed a Reply in Support (Doc. 24). Thus, this matter is ripe for the Court's review. For the following reasons, Defendant's Motion for Summary Judgment (Doc. 12) is **GRANTED**.

### FACTS

### I. Plaintiff's Employment

Plaintiff Elizabeth Cowperthwait began working at Huntleigh Healthcare on July 29, 2002, as an Account Executive. (Cowperthwait Dep., Doc. 10, Pg. ID 60.) Defendant Arjo Inc. later acquired Huntleigh Healthcare, so Plaintiff became an employee of Defendant after this merger. (*Id.*) Defendant describes itself as a global supplier of medical devices, such as hospital beds, patient transfer solutions, hygiene systems, vascular therapy products, disinfection products, diagnostic products, and therapeutic support systems. (Bertucci Decl., Doc. 12-2, ¶ 5.) As an Account Executive, Plaintiff sold

medical equipment on behalf of Defendant. (Raffensberger Decl., Doc. 12-3, ¶ 3.) Plaintiff was part of Defendant's Deep Vein Thrombosis and Therapeutic Support Systems ("DVT/TSS") team at the time of her separation. (Cowperthwait Dep., Doc. 10, Pg. ID 61-62, 72.) She serviced clients in Indiana, Ohio, Kentucky, and West Virginia. (*Id.*) During this time, Plaintiff lived about fifteen minutes north of Cincinnati, Ohio. (*Id.* at Pg. ID 56.) Defendant's DVT/TSS team serviced 36 territories throughout the United States; meanwhile, Defendant's Patient Handling, Hygiene, and Disinfection Equipment ("PHD") team operated in a separate set of 37 territories. (Raffensberger Decl., Doc. 12-3, ¶ 3.) In total, Defendant had 10 Regional Sales Directors and 58 Account Executives on its DVT/TSS and PHD teams. (Bertucci Decl., Doc. 12-2, ¶ 8.)

## II.     Defendant's Reduction-in-Force Plan

In January 2023, Defendant's Managing Director of Sales at the time, Dan Raffensberger, announced a reduction-in-force plan (the "RIF"). (Raffensberger Decl., Doc. 12-3, ¶ 4; *see also* Bertucci Decl., Doc. 12-2, ¶¶ 6-7.) The RIF would consolidate the 73 total territories, which included both the DVT/TSS and PHD teams, into a single set of 41 territories across the United States. (Raffensberger Decl., Doc. 12-3, ¶ 4.) The consolidated team, called the Acute team, would cover the 41 territories and sell both DVT/TSS and PHD products. (*Id.*) The goal of this consolidation was to create territories that had roughly the same number of hospital beds, as the number of beds equated to the number of sales opportunities. (*Id.* at ¶ 5.) This way, Account Executives, like Plaintiff, would have equal opportunities to make sales for Defendant. (*Id.*) Because more densely populated areas, like large cities, could have the same number of beds as less dense areas,

2

some territories were comprised of a smaller geographic location than others; nevertheless, the territories had roughly the same number of hospital beds. (*Id.* at ¶ 6.)

Additionally, with these new territories, Defendant planned to select one Account Executive for each territory, rather than have multiple assigned to each territory. (Raffensberger Decl., Doc. 12-3, ¶ 7.) And, in order to reduce travel time and expenses, Defendant aimed to assign territories based on the Account Executives' residence. (*Id.*) To select an Account Executive for each of the new 41 territories, Defendant established a panel interview process implemented by Marianne Potterton, Defendant's former Director of Human Resources. (*Id.*; Potterson Dep., Doc. 11, Pg. ID 268.) Each interview had three interviewers: a sales leader, a marketing leader, and an HR leader. (*Id.*) And, each panel asked the same 11 questions and used the same ratings scale. (*Id.*) Account Executives competing for the same territory interviewed with identical panels. (*Id.* at Pg. ID 273.) Plaintiff, Thomas Wiseman, David Faulkner, and Brad Pelfrey were all Account Executives for Ohio, Kentucky, and Indiana, as well as parts of Tennessee and South Carolina. (Bertucci Decl., Doc. 12-2, ¶ 9.) However, after the realignment of territories, Kentucky became its own territory, which included parts of West Virginia and Virginia. (*Id.* at ¶ 11.) Pelfrey was the only Account Executive who resided in Kentucky, so he was automatically given that territory without an interview. (*Id.* at ¶ 12.) Meanwhile, Faulkner and another Account Executive, Lance Erickson, both resided in Indiana, which had also become its own territory. (*Id.* at ¶ 13.) Thus, the two competed against each other in the interview process for that territory. (*Id.*) This was also the case with Plaintiff and Wiseman, who both lived in southern Ohio, part of the Southern Ohio Territory. (*Id.* at

3

¶¶ 11, 14.) Put differently, Plaintiff was competing against Wiseman in the interview process for the Southern Ohio Territory. (*Id.*)

For the interviews, Defendant instructed the panelists not to review the past performance data of the applicants but instead to focus only on their responses to the questions posed. (Potterton Dep., Doc. 11, Pg. ID 273.) This instruction was intended to maximize objectivity since some Account Executives' performance was skewed by the surge in demand for certain products during the COVID-19 pandemic. (*Id.*) However, applicants were still able to discuss their sales data, performance, and history during the interview. (*Id.* at Pg. ID 272.) Plaintiff interviewed on January 27, 2023, and her interview panel consisted of Chris Benne, the Regional Sales Director, Jessica Shatzer, Vice President of Marketing, and Brian Reschke, HR Partner. (Cowperthwait Dep., Doc. 10, Pg. ID 83-84; Bertucci Decl., Doc. 12-2, ¶ 16.) Plaintiff did not know Shatzer or Reschke and did not work under Benne. (Cowperthwait Dep., Doc. 10, Pg. ID 83.) While she learned of her interview date five days prior, she testified that she did not prepare for the interview outside of her normal daily responsibilities. (*Id.* at Pg. ID 81.) She also admitted that she did not recall if she mentioned her top sales performance in prior years. (*Id.* at Pg. ID 83-84.)

The panel took notes during the interview and each panelist rated the candidates out of 55 points, for a total possible 165 points. (Bertucci Decl., Doc. 12-2, ¶ 19.) Notes from Plaintiff's interview stated that she gave "very short answers overall," and that she did "not seem particularly interested." (*Id.* at ¶ 16.) Additionally, the panel noted that she "did not include additional insight related to [the] questions." (*Id.* at ¶ 17.) By

4

comparison, notes from Wiseman's interview described him as "enthusiastic" and mentioned that he "provide[d] good detail on his accomplishments, skill set[,] and desire" for the role. (*Id.* at ¶ 18.) Accordingly, Plaintiff received 80 points out of 165, while Wiseman received 117 points. (*Id.* at ¶¶ 19-20.) Thus, Defendant chose Wiseman as Account Executive for the Southern Ohio Territory; Plaintiff's employment with Defendant ended on February 3, 2023. (*Id.* at ¶¶ 21-22.)

## PROCEDURAL POSTURE

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 27, 2023, within 180 days of her termination. (Compl., Doc. 1, ¶ 7.) She received her Right to Sue letter on March 5, 2024, and filed her Complaint in this Court on May 10, 2024. (*Id.* at ¶ 8.) She brings claims of sex discrimination under Title VII and Ohio Revised Code § 4112, along with age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code § 4112. (*Id.* at ¶¶ 35-66.) After the parties engaged in discovery, Defendant filed its Motion for Summary Judgment, which has been fully briefed. (*See* Docs. 12, 18, 24.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party

5

meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forth probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

Courts analyze Title VII claims and Ohio Civil Rights Act claims under the same standard. *Nelson v. Ball Corp.*, 656 F. App'x 131, 133 (6th Cir. 2016); *see also Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). In such cases, when a plaintiff has not presented any direct evidence of discrimination, like here, the *McDonnell Douglas* burden-shifting framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, a plaintiff faces the initial burden of presenting a prima facie case, which creates a rebuttable presumption of discrimination that requires the defendant "to articulate some legitimate, nondiscriminatory reason for taking the challenged action." *Johnson v. Kroger Co.*, 319 F.3d, 866 (6th Cir. 2003) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-

6

73 (6th Cir. 2000)) (cleaned up). Once the defendant satisfies this burden, the plaintiff must prove that the defendant's proffered reason was a "pretext to hide unlawful discrimination." *Id.* (quoting *Johnson,* 215 F.3d at 573) (cleaned up). Defendant asserts that it is entitled to summary judgment on all of Plaintiff's age and sex discrimination claims. While Plaintiff and Defendant combine their arguments for the four claims into one analysis, the Court will examine each set of claims separately. But, first, the Court will address the preliminary matter of whether Plaintiff has presented an RIF discrimination case.

As Defendant points out in its Motion, in RIF cases, the fourth prong of a prima facie case requires the plaintiff to demonstrate that direct, circumstantial, or statistical evidence tends to indicate that the employer singled out the plaintiff for impermissible reasons. (Motion, Doc. 12, Pg. ID 330 (citing *Cichewicz v. UNOVA Indus. Auto. Sys., Inc.,* 92 F. App'x 215, 218 (6th Cir. 2004); *see also Scott v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir. 1998)).) Plaintiff agrees that typical RIF cases require this showing, but asserts that her case is not, in fact, an RIF case. (Response, Doc. 18, Pg. ID 900.) Rather, Plaintiff argues that, since the reorganization required her to interview to keep her spot, her case more closely resembles a failure-to-hire scenario. (*Id.*) Defendant, however, takes issue with Plaintiff's attempt to shift the theory of her case at this stage. (Reply, Doc. 24, Pg. ID 965.) As Defendant points out, Plaintiff may not "expand [her] claims to assert new theories" in response to summary judgment. *Bridgeport Music, Inc. v. WB Music Corp.,* 508 F.3d 394, 400 (6th Cir. 2007) (citing *Tucker v. Union of Needletrades, Indus., & Textile Emps.,* 407 F.3d 784, 788 (6th Cir. 2005)).

In determining whether a plaintiff has improperly attempted to raise a new theory at summary judgment, courts examine whether the defendant had notice of the theory prior to the filing of the plaintiff's response in opposition. *Clark v. Shop24 Global, LLC*, 77 F. Supp. 3d 660, 691 (S.D. Ohio 2015). Here, the Court notes that Plaintiff's Complaint is devoid of any reference to a failure-to-hire claim. (*See generally* Compl., Doc. 1.) Instead, Plaintiff alleged that her interview requirement for the reorganization was based on gender discrimination, and the RIF, as a whole, had a disproportionate effect on female Account Executives, as well as older Account Executives. (*Id.*) Neither of these theories sound in a failure-to-hire cause of action. In *Clark*, the court found that the seemingly new theory was not, in fact, new, because the defendant had made arguments in its motion for summary judgment that related to the argument the plaintiff made in response. *Clark*, 77 F. Supp. 3d at 691. But, such is not the case here; Defendant does not include any assertions that indicate it anticipated a failure-to-hire theory. (*See generally* Motion, Doc. 12.) While Defendant's arguments supporting its decision to choose Wiseman could be used in the failure-to-hire context, they can also be used, and indeed are used, in the context of showing a lack of circumstantial evidence that the RIF was discriminatory. The remainder of the record similarly lacks any reference to a failure-to-hire claim. Thus, the Court does not find that Defendant had actual or constructive notice of Plaintiff's failure-to-hire theory prior to her Response. The remaining analysis will therefore review Plaintiff's claims in the RIF context.

## I.      Plaintiff's Age Discrimination Claims

In an RIF case, to establish a prima facie case of age discrimination under the ADEA, Plaintiff must demonstrate: (1) she was over forty years old; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) direct, circumstantial, or statistical evidence tends to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. *Cichewicz*, 92 F. App'x at 218; *see also Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 448 (6th Cir. 2018).

Defendant states that Plaintiff's age discrimination claims fail because she cannot demonstrate the final prong of her prima facie case. (Motion, Doc. 12, Pg. ID 331.) In support of its argument, Defendant notes that Plaintiff cannot point to any evidence tending to show that the reorganization process was inherently or purposefully discriminatory. (*Id.* at Pg. ID 332.) On the contrary, Defendant argues, the process was designed to make it "as objective as possible," with identical questions, panels, and preparation time. (*Id.*) While Plaintiff "nods to the retention of Mr. Pelfrey as somehow discriminatory because he did not have to interview for the Kentucky Territory," Defendant reiterates that he was the only Account Executive living in that territory. (*Id.* at Pg. ID 333.) Further, this contention ignores the fact that other Account Executives competed against each other when they lived in the same territories; Plaintiff was not singled out by being asked to interview. (*Id.*) And, Defendant points out, factors such as an employee's residence are legitimate operational needs on which an employer can rely in a RIF. (*Id.* (citing *Timken Co. v. Vaughan*, 413 F. Supp. 1183, 1187 (N.D. Ohio 1976)).)

9

While Plaintiff does not address the RIF-specific fourth prong, she claims that her non-selection was based on age discrimination. (Response, Doc. 18, Pg. ID 901.) First, she notes that Wiseman was over ten years younger than she, adding that age differences of ten years are sufficient to show that a plaintiff was replaced by a younger employee, even if that comparator is also over forty years old. (*Id.* (citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003)).) However, as the Court noted above, the relevant analysis is not whether Plaintiff was replaced by a younger employee, but whether circumstantial evidence indicates that she was singled out. Her non-selection alone does not indicate that she was singled out. *Hightower v. Keystone Auto. Indus.*, 653 F. Supp. 3d 420, 429 (N.D. Ohio 2023) ("[E]vidence that one competent employee was retained over another is not sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff . . . in the RIF context.") (quoting *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 528 (6th Cir. 2021)).

Additionally, Plaintiff contends that she asked about interviewing for the Kentucky Territory, but Defendant had told her she could not. (Response, Doc. 18, Pg. ID 901.) Meanwhile, Defendant had let another Account Executive, John Hurley, interview for two territories in Massachusetts, "even though he lived outside one of them," because he lived very close to the territory lines. (*Id.*) Plaintiff states that this is evidence of discriminatory intent since she, too, lived very close to the Kentucky Territory lines but was not allowed to interview for that territory as well. (*Id.*) She argues that Defendant made this accommodation for Hurley, who is over ten years younger than she, and not

10

for her, which further demonstrates that Defendant singled her out for discriminatory reasons. (*Id.*)

However, as Defendant points out, Plaintiff testified that she never actually asked her supervisor, Raffensberger, if she could apply for other nearby territories when told she would interview for the Southern Ohio territory. (Reply, Doc. 24, Pg. ID 972-73; *see also* Cowperthwait Dep., Doc. 10, Pg. ID 90-91.) But, Plaintiff notes that Hurley never asked Raffensberger about interviewing in two territories either, and Defendant allowed him to do so anyway. (Response, Doc. 18, Pg. ID 902; *see also* Raffensberger Dep., Doc. 14, Pg. ID 505.) Nevertheless, the Court reiterates that Plaintiff competed against Wiseman, a younger, male employee, in an interview for the Southern Ohio territory; there is no evidence that Defendant offered Wiseman the opportunity to interview for a second territory as well. Thus, the Court is not convinced that Defendant's choice to not have Plaintiff interview for multiple territories is evidence of singling her out for age discrimination.

Plaintiff also contends that the interview process is evidence that she was singled out because of her age. She points to the interviewers' comments that she lacked energy as "euphemistic for age . . . bias." (Response, Doc. 18, Pg. ID 904.) But, Defendant rebuts that "isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of . . . discrimination." (Reply, Doc. 24, Pg. ID 969 (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)) (cleaned up).) And, the Court agrees. In fact, courts have found that comments specifically about an employee's energy, or lack thereof, do not present circumstantial evidence of age

11

discrimination. *See, e.g., Gargaro v. Oppenheimer & Co.*, No. 04-75060, 2006 WL 305577, at *9 (E.D. Mich. Feb. 9, 2006) (finding that the plaintiff failed to satisfy fourth prong because employer's comments that she needed "more energy" did not create an inference of age discrimination); *Levy v. Mercantile Stores Co., Inc.*, No. 97-4283, 1998 WL 808215, at *5 (6th Cir. Nov. 16, 1998) (Comments about wanting energetic employees are ambiguous because "such attributes represent legitimate performance criteria for retail marketing employees.").

Finally, Plaintiff argues that, because the men chosen for the former territories were all under the age of sixty, her termination was the result of discrimination. (Response, Doc. 18, Pg. ID 904.) Defendant attempts to dispute this argument by stating that Plaintiff "does not cite any caselaw demonstrating that sixty is the objectively relevant age simply because Plaintiff, herself, was over the age of sixty at the time of the RIF." (Reply, Doc. 24, Pg. ID 970.) Plaintiff, though, is correct that the Sixth Circuit has found that "an employer violates ADEA when preference is given to a younger employee even if the younger employee is within the protected class of persons age 40-and-over." (Response, Doc. 18, Pg. ID 904-05 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1467 (6th Cir. 1990)).) Nevertheless, Defendant notes that the statistical evidence of the RIF does not support Plaintiff's allegations. (Motion, Doc. 12, Pg. ID 335.) Specifically, Defendant affirms that, of the 56 Account Executives subject to the RIF, 45 of them, or 80 percent, were over the age of 40. (*Id.*) And, of the 38 Account Executives retained, 31, or 82 percent, were over the age of 40. (*Id.*) Furthermore, Defendant promoted two women over the age of 40, one of whom was 52, as part of the reorganization. (Reply, Doc. 24, Pg. ID 970, n.5.)

12

As Defendant puts it, "the statistical evidence related to the RIF not only fails to support Plaintiff's arguments, but it also affirmatively refutes them." (Motion, Doc. 12, Pg. ID 335.)

To this point, Plaintiff states that 9 of the 56 Account Executives—or 16 percent—were over the age of 60 prior to the RIF. (Response, Doc. 18, Pg. ID 904-05.) Of the 18 Account Executives terminated, 6 were over the age of 60. (*Id.*) And, after the RIF, 4 of the remaining 37 were over 60, or 10 percent. (*Id.*) However, to create an inference of discrimination, "statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Thompson v. Fresh Prods., LLC,* 985 F.3d 509, 526 (6th Cir. 2021). Indeed, the Sixth Circuit has emphasized "the importance of sample size, finding relatively small sample sizes to be suspect and incapable of supporting an inference of discrimination." *Id.* In fact, courts have found sample sizes of 27 terminated employees or smaller to be insufficient, while sizes over 150 employees are sufficient. *Id.* (collecting cases). In *Thompson,* the court declined to consider the plaintiff's statistical evidence because the sample size was too small, and she did not present any analysis of the statistical significance of the data. *Id.* at 527. Defendant here terminated 18 employees as part of its RIF; this sample size is too small to create an inference of discrimination. And, Plaintiff did not present any analysis on the statistical significance, such as a Chi-Square statistic or binomial distribution. *See Barnes,* 896 F.2d at 1463. Accordingly, statistical evidence cannot create an inference of discrimination here.

Therefore, without direct, circumstantial, or statistical evidence tending to show that the RIF singled out Plaintiff in her termination, Plaintiff has failed to establish a prima facie case of age discrimination. For this reason, her age discrimination claims fail.

## II.      Plaintiff's Sex Discrimination Claims

Plaintiff's sex discrimination claims fare no better. To establish a prima facie case of sex discrimination, Plaintiff must show that: (1) she is a woman; (2) she experienced an adverse employment action; (3) she was otherwise qualified for the position; and, in an RIF context, (4) direct, circumstantial, or statistical evidence tends to indicate that the employer singled out the plaintiff for discharge for impermissible reasons. *Cichewicz*, 92 F. App'x at 218; *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016). Defendant maintains that Plaintiff cannot establish the fourth prong for her sex discrimination claims either.

Without direct evidence of discrimination, Plaintiff must show either circumstantial or statistical evidence indicating that Defendant singled her out because of her sex. *Cichewicz*, 92 F. App'x at 218. Similar to its arguments for the age discrimination claims, Defendant states that no circumstantial evidence indicates that Defendant singled out Plaintiff in the RIF. (Motion, Doc. 12, Pg. ID 332-33.) In support of this contention, again, Defendant points to the fact that the interview process was not unique to Plaintiff; indeed, she competed against a man, Wiseman, while two other men were required to interview for the Indiana Territory. (*Id.* at Pg. ID 332.) Plaintiff argues that her inability to interview for the Kentucky Territory indicated discrimination against her. (Response, Doc. 18, Pg. ID 902; *see also* Raffensberger Dep., Doc. 14, Pg. ID 505.)  But, as the Court

14

noted above, Wiseman was not offered the opportunity to interview for the Kentucky Territory either, overcoming Plaintiff's contention that Defendant singled her out because of her sex.

As Plaintiff points out, Defendant commented in its Motion that Plaintiff did not wear a suit to her interview. (Motion, Doc. 12, Pg. ID 326; Response, Doc. 18, Pg. ID 903.) Plaintiff notes that, not only did she wear professional clothes, but "[b]ias against a female candidate based on her appearance supports an inference of discrimination based on gender stereotypes." (Response, Doc. 18, Pg. ID 903.) However, the Court finds that these criticisms about her appearance are absent from any of her interview notes, and Plaintiff does not otherwise point to record evidence. (*See* Interview Notes, Doc. 12-2, Ex. 3, Pg. ID 406-23.) Accordingly, the Court disagrees that the mention of her clothing in the Motion indicates that her appearance, and thus her gender, played a factor in her low interview score. Plaintiff scored lower than her male competitor and thus was terminated during the RIF; but, like with the age discrimination claims, this fact alone does not establish circumstantial evidence. *Hightower*, 653 F. Supp. 3d at 429. Plaintiff cannot show any other circumstantial evidence that indicates Defendant singled her out in the RIF because of her gender. And, Plaintiff does not put forth any statistical evidence to that end either. For these reasons, her sex discrimination claims fail at the prima facie stage.

\*     \*     \*

Finally, Plaintiff maintains that her two types of claims do not exist in isolation: she can sustain a claim for discrimination based on protected categories in combination with each other. (Response, Doc. 18, Pg. ID 905 (collecting cases).) She points out that the

15

two oldest female Account Executives were terminated during the RIF, and the remaining female Account Executives were all under the age of 60, leading a "reasonable juror [to] conclude that Plaintiff's termination was the result of age and gender discrimination." (*Id.* at Pg. ID 906.)

The Court finds this unpersuasive for two reasons, though. First, to the extent Plaintiff attempts to paint these figures as statistical evidence of gender and age discrimination, this statistical argument fails for the same reason as Plaintiff's earlier argument. Namely, the sample size is too small, and Plaintiff provided no analysis on the statistical significance of the data. *See Barnes*, 896 F.2d at 1463. Second, even as circumstantial evidence, the termination of these two women is unconvincing as the only support for Plaintiff's fourth prong, especially when Defendant retained several older women, including promoting a 52-year-old woman. (*See* Reply, Doc. 24, Pg. ID 970, n.5; Raffensberger Dep., Ex. 3, Doc. 14-3, Pg. ID 673-74.)

The fact that Plaintiff was both a woman and over forty years old cannot establish the fourth prong of her RIF case, even taken together. To allow such facts to constitute the fourth element would allow any person in a protected class who was terminated to establish a prima facie case of discrimination. *Barnes*, 896 F.3d at 1465. As the Sixth Circuit noted in *Barnes*, "a plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a [non-protected] co-worker working in the same position," or that "the employer made statements indicative of a discriminatory motive." *Id.* at 1466. But, Plaintiff has offered neither here, even considering her protected categories together. The evidence of just two older women, along with male and younger

16

employees, being subjected to an RIF, is simply not "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against" her. *Id.; see also Hightower*, 653 F. Supp. 3d at 429. In sum, Plaintiff cannot establish the fourth prong for a prima facie case in either set of her discrimination claims.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 12) is **GRANTED**, and summary judgment is **ENTERED** in favor of Defendant on all claims. This case is hereby **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

17